**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BRANDON CALLIER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRONT LINE FINANCIAL, LLC,** a California Limited Liability Company **and ROBERT S. KAKISH**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No. EP-26-cv-02344-LS** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western District of Texas, and was present in El Paso County, Texas, for all texts in this case.

2. Defendant FRONT LINE FINANCIAL, LLC dba FRONT LINE FINANCIAL GROUP ("Front Line") is a limited liability company organized and existing under the laws of California with a principal address of 10737 Laurel Street, Suite 200, Rancho Cucamonga, California, and can be served via its registered agent Corporate Service Center, Inc., 2011 Palomar Airport Road, Suite 101, Carlsbad, California 92011.

3. Defendant ROBERT KAKISH ("Kakish") is a natural person, resident of California, Chief Executive Officer of Defendant Front Line, personally participated in the activities alleged herein, and can be served at 15469 Red Pepper Place, Fontana, California 92336.

4. Front Line and Kakish are hereinafter collectively referred to as "Defendants."

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Count I under 28 U.S.C. § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

6. The Court has pendant jurisdiction over the Texas Business and Commerce Code claims under 28 U.S.C § 1367.

7. This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themselves of the State of Texas and of this District, and there is a sufficient relationship between Defendants' purposeful contacts with Texas and the litigation.

   a. Defendants target Texas when marketing insurance produces and regularly conducts business in this District, including by telephone solicitation.

   b. Its agents sent at least fourteen (14) telephone calls spoofing a Texas 915-area code to Plaintiff's 915-area-code telephone number, to generate sales for Defendants.

   c. Defendants were located in Texas when the phone calls were made as evidenced by each of the phone calls coming from a Texas area code: 915, 726 and 325.

   d. The purposeful phone calls to Texas injured Plaintiff in Texas, creating a causal link between Defendants, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support the specific personal jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

e. Plaintiff brought claims under Texas Business and Commerce Code Chapter 301. Under Texas law, venue is proper in the county where the phone call(s) were received when a claim is brought under TBCC Chapter 301. TBCC § 301.105(2).

8. Venue is proper under 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas, he received a substantial, if not every single, phone call from Defendants, which is the subject matter of this lawsuit.

**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes. 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. The FCC recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. The FCC requires "prior express consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**TEXAS BUSINESS AND COMMERCE CODE CHAPTER 301**

21. A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor, immediately after making contact with the consumer to whom the call is made, identifies himself or herself by name, the business on whose behalf the telephone solicitor is calling, and the purpose of the call. TBCC § 301.051(b)(A-C).

22. A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor makes the call after 12 noon or before 9 p.m. on a Sunday or after 9 a.m. and before 9 p.m. on a weekday or a Saturday. TBCC § 301.051(b)(2).

23. A consumer injured by a violation of this chapter may bring an action for recovery of damages. TBCC § 301.104.

24. A consumer injured by a violation of this chapter may bring an action for recovery of damages. The damages awarded may not be less than the amount the consumer paid the person who sold the consumer goods or services through the use of the telephone solicitor, plus reasonable attorney's fees and court costs.

25. Venue for an action brought under this chapter is in the county in which the consumer telephone call was received. TBCC § 301.105(2).

**TEXAS BUSINESS AND COMMERCE CODE § 305.053**

26. A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for damages in the amount provided by this section. Tex. Bus. & Com. Code § 305.053(a)(2).

27. A plaintiff who prevails in an action for damages under this section is entitled to the greater of $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b)(1-2).

28. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 305.055.

**TEXAS BUSINESS AND COMMERCE CODE § 302.101**

29. A seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made. Tex. Bus. Com. Code § 302.101.

30. A person commits an offense if the person knowingly acts as a salesperson on behalf of a seller who violates the registration requirements of this chapter. Tex. Bus. Com. Code § 302.252(a).

31. "Telephone call" has the meaning assigned by Section 304.002. Tex. Bus. Com. Code § 302.001(6-a).

32. "'Telephone solicitation' means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. Code § 302.001(7).

33. "Telephone solicitation" is further defined as "a telephone call a purchaser makes in response to a solicitation sent by mail or made by any other means." *Id.*

34. An "item" is defined as a property or service." Tex. Bus. & Com. Code § 302.001(1).

35. "A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation." Tex. Bus. & Com. Code § 302.002.

36. A "seller" is defined as "A person who makes a telephone solicitation on the person's on behalf." Tex. Bus. & Com. Code §302.001(5).

37. A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

38. A seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made. Tex. Bus. & Com. Code § 302.101(a).

39. When a telephone solicitation is made and before consummation of any sales transaction, a seller shall provide to each purchaser the complete street address of the location from which the salesperson is calling the purchaser, and if different, the complete street address of the seller's principal location. Tex. Bus. & Com. Code § 302.202(1).

40. A person commits an offense if the person knowingly acts as a salesperson on behalf of a seller who violates the registration requirements of this chapter. Each violation constitutes a separate offense.

41. Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

42. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, deposition expenses, witness fees, and attorney's fees.

43. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

44. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

45. Defendant Front Line is a marketing company that sells life insurance leads and markets these insurance leads via pre-recorded messages and a website located at https://frontline-finance.com.

46. Defendant Font Line's website does not contain a mailing address, email address, ownership information, or any other identifying information.

47. Defendant Front Line's website does not contain a "contact us" page, terms and conditions page, or privacy policy.

48. Defendant Front Line is in the business of selling marketing leads.

49. Defendant Front Line is not a licensed insurance agency.

50. Defendant Front Line does not sell life insurance.

51. Defendant Kakish is the sole officer of Defendant Front Line and ordered that the website be created sans contact information so that Defendant Front Line could operate in the shadows.

52. Defendant Kakish ordered Defendant Front Line to utilize prerecorded messages as part of its marketing campaign.

53. Plaintiff received at least fourteen (14) prerecorded messages from Defendants to his cell phone ending in 1830.

54. Defendants did not have Plaintiff's consent to send any of the calls alleged herein.

55. Each of the phone calls received by Plaintiff from Defendants contained a prerecorded non-human robotic-sounding voice message that stated:

> "Good evening, my name is Jessica. I'm calling from the senior resource center about the benefit card we mailed you on the new state-regulated plan that helps

> with outstanding medical bills and the Texas final expense plan for all Texas residents. Have you received it?"

56. Each of the phone calls received by Plaintiff from Defendant are detailed in Table A.

57. The phone calls received by Plaintiff on April 2, 2026, from Defendant contained the same pre-recorded message, but used the name "Nina" instead of "Jessica."

58. On April 1, 2026, at 4:14 PM, Plaintiff received a phone call that displayed 915-995-6345 on Plaintiff's caller identification.

59. Plaintiff answered the phone, and the same prerecorded message as in paragraph 49 began to play. Plaintiff obtained a quote as part of an investigation into the origin of the phone call.

60. Plaintiff was connected to a telemarketer who identified himself as "Jacob Wilson" ("Wilson").

61. Wilson stated, "I am a pre-qualifier, and I have a state advisor with me on the other line."

62. Wilson asked Plaintiff a series of questions supplied to him by Defendant Kakish. These questions included Plaintiff's age, beneficiary, zip code, and various health questions before connecting Plaintiff to the "state advisor".

63. Wilson then connected Plaintiff to Lance Ortega who completed the application process with Plaintiff by asking Plaintiff the same questions as Wilson.

64. Ortega then enrolled Plaintiff in a life insurance policy with Americo Insurance Company.

65. On April 1, 2026, at 4:09 PM, Lance Ortega texted Plaintiff a copy of his business card, which contained Defendants' company name, company logo, and an email address of lancefrontlinefinancial@gmail.com.

66. Plaintiff did not give Defendants consent to send any of these prerecorded messages.

67. Table A displays each of the phone calls received by Plaintiff from Defendants.

**TABLE A**

| Number | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1. | 03/31/2026 | 3:31 PM | 915-283-3640 | Prerecorded Jessica |
| 2. | 04/01/2026 | 4:14 PM | 915-995-6345 | Prerecorded Jessica – purchased policy |
| 3. | 04/01/2026 | 4:32 PM | 915-745-6629 | Prerecorded Jessica |
| 4. | 04/01/2026 | 5:47 PM | 915-703-5846 | Prerecorded Jessica |
| 5. | 04/01/2026 | 5:58 PM | 915-995-4122 | Prerecorded Jessica |
| 6. | 04/01/2026 | 6:09 PM | 915-834-7488 | Prerecorded Jessica |
| 7. | 04/02/2026 | 8:09 AM | 915-296-7629 | Nina – Same prerecorded message |
| 8. | 04/02/2026 | 2:42 PM | 915-702-0547 | Nina – Same prerecorded message |
| 9. | 04/03/2026 | 1:15 PM | 915-239-9867 | Prerecorded Jessica |
| 10. | 04/03/2026 | 3:01 PM | 915-821-8350 | Prerecorded Jessica |
| 11. | 04/03/2026 | 4:55 PM | 915-239-0553 | Prerecorded Jessica |
| 12. | 04/06/2026 | 2:42 PM | 915-505-5218 | Nina – Same prerecorded message |
| 13. | 04/06/2026 | 4:06 PM | 325-331-3568 | Prerecorded Jessica |
| 14. | 04/07/2026 | 8:23 AM | 726-231-1947 | Prerecorded Jessica |

68. The prerecorded messages did not disclose the name of the company at any time as required under both federal and state law.

69. Plaintiff called each of the phone numbers listed in Table A. None of the numbers listed in Table A are connected to Defendants.

70. Through information and belief, Defendants were located in Texas when each of the phone calls was placed because each of the phone calls contained a Texas based area code.

71. Defendants made the phone calls Plaintiff and transferred Plaintiff to Ortega.

72. Defendants' website at https://frontline-finance.com/agents/leads/ states "Skip the dialing entirely. These are "Live Transfers" – people who are ready to buy and want to talk to a licensed agent immediately. Your phone rings, you pick up, and you start the presentation."




73. Defendants' website at https://frontline-finance.com/agents/leads/ states "We do things differently. We provide **Exclusive, Real-Time Leads** that are generated by our own marketing engine."




74. Defendant Front Line, at the direction and control of Defendant Kakish, sent Plaintiff prerecorded messages as part of its marketing campaign.

75. Defendants then transferred Plaintiff to Ortega who completed the insurance application process.

76. Defendant Kakish purchased the system used to record and disseminate the prerecorded messages.

77. Kakish trained his employees on the use of the system and instructed his employees and agents to use the system to send prerecorded phone calls as part of Defendant marketing campaign.

78. Kakish approved the script for the prerecorded messages.

79. Kakish materially participated in and directed the actions of the agents who physically placed the phone calls received by Plaintiff.

80. None of the fourteen (14) prerecorded phone calls properly stated the name of the company making the phone calls or the name of the seller.

81. All artificial or prerecorded voice telephone messages shall at the beginning of the message state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. 47 C.F.R. § 64.1200(b)(1).

82. A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor, immediately upon making contact with the consumer to whom the call is made, identifies himself or herself by name and the business on whose behalf the telephone solicitor is called. Texas Business and Commerce Code § 301.051(b)(1)(A-B).

83. No emergency necessitated the calls.

**INJURY, HARM, AND DAMAGES AS A RESULT OF THE CALLS**

84. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

85. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

86. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

87. Plaintiff has been harmed, injured, and damaged by the calls, including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

88. Plaintiff incurred increased electric bills as a result of more frequent charging of his cell phone related to the unauthorized phone calls.

**COUNT ONE:**

**Non-Emergency Prerecorded Call to Cellular Telephones, 47 U.S.C. 227(b)(1)(A)(iii)**
**(Against All Defendants)**

89. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-88.

90. The foregoing acts and omissions of Defendant and/or their affiliates or agent constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making non-emergency telemarketing ATDS texts to Plaintiff's cellular telephone numbers without his prior express

written consent.

91. Plaintiff was statutorily damaged at least fourteen (14) times under 47 U.S.C § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

92. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damages amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

**COUNT TWO:**
**Violations of Texas Business and Commerce Code § 301.051(b)(1)(A-C)**
**Failure to Identify**
**(Against All Defendants)**

93. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-92.

94. Defendants did not immediately after making contact with the consumer to whom the call is made, identify himself or herself by name, the business on whose behalf the telephone solicitor is calling, and the purpose of the call. TBCC § 301.051(b)(A-C).

95. Plaintiff was damaged at least fourteen (14) times by Defendants.

96. A consumer injured by the chapter may bring an action for recovery of damages. The damages may not be less than the amount the consumer paid the person who sold the consumer good or services through the use of the telephone solicitor. Tex. Bus. Com. Code § 301.104.

97. Plaintiff seeks damages in the amount of $1,000 per violating phone call.

**COUNT THREE**
**Violations of Texas Business and Commerce Code § 305.053**
**Prerecorded Phone Calls in violation of 47 U.S.C. 227(b)**
**(Against All Defendants)**

98. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-97.

99. Defendants placed at least fourteen (14) prerecorded phone calls to Plaintiff in violation of 47 U.S.C. § 227(b).

100. A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in theist ate against the person who originates that communication. Tex. Bus. Com. Code § 305.053.

101. Plaintiff was statutorily damaged at least fourteen (14) times under 47 U.S.C § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call. Tex. Bus. Com. Code § 305.053(b)(1).

102. If the court finds that the defendant committed the violation knowingly or intentionally, the court may increase the amount of the award of damages under Subsection (b) to not more than the greater of $1,500 for each violation. Tex. Bus. Com. Code § 305.053(c)(1).

103. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. Com. Code § 305.055.

## COUNT FOUR
**Violations of Texas Business and Commerce Code 302.101**
**(Failure to Obtain a Telephone Solicitation Registration Certificate)**
**(Against All Defendants)**

104. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-103.

105. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making fourteen (14) non-registered solicitation call without holding a Texas telephone solicitation registration.

106. Plaintiff is entitled to an award of up to $5,000 in damages for each of fourteen (14) such violation. Texas Business and Commerce Code 302.302(a).

107. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d)

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An award of $1,500 per call in statutory damages arising from the TCPA 47 U.S.C. 227(b) intentional violations for fourteen (14) calls;

D. An award of $1,000 per phone call in statutory damages arising from violations of the Texas Business and Commerce Code 301.051(b)(1)(A-C) for fourteen (14) phone calls.

E. An award of $1,500 per call in statutory damages arising from TBCC 305.053 intentional violations for fourteen (14) calls;

F. An award of $5,000 per call in statutory damages arising from TBCC 302.101 violations for fourteen (14) calls;

G. An award to Plaintiff of damages, as allowed by law under the TCPA;

H. An award to Plaintiff of damages, as allowed by law under the TBCC;

I. An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

J. Such further relief as the Court deems necessary, just, and proper.

Dated: September 14, 2026,

Respectfully submitted,

/s/ Brandon Callier

______________________________

Brandon Callier
Plaintiff, Pro Se
1490 A George Dieter Drive
#174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com